**Larry Lee WALKER, John P. Biscanin, Esq., Administrator of the Estate of Irma J. Walker, Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Appellee.**

No. 91–3377.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1992.

Decided Aug. 21, 1992.

---

David T. Greis, Kansas City, Mo., argued (William H. Pickett, on the brief), for appellants.

Joseph E. Jones, Omaha, Neb., argued (Rex A. Rezac, on the brief), for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and EISELE,* Senior District Judge.

\* The Honorable G. Thomas Eisele, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable R.E. Longstaff, United States Magistrate Judge for the Southern District of Iowa. Since November 5, 1991, Judge Longstaff has been a United States District Judge for the Southern District of Iowa. The parties consented to this case being handled by a magistrate judge under 28 U.S.C. § 636(c).

McMILLIAN, Circuit Judge.

Larry Lee Walker and the estate of Irma J. Walker (collectively "Walkers") appeal from a final judgment entered in the United States District Court[1] for the Southern District of Iowa granting summary judgment in favor of State Farm Mutual Automobile Insurance Co. (State Farm). *Walker v. Eloge,* Civil No. 86–36–W (S.D.Iowa Nov. 28, 1988) (order).[2] For reversal, the Walkers argue the district court erred in holding that (1) Kansas law applied and (2) Kansas law prohibits the stacking of underinsured motorist coverage. For the reasons discussed below, we affirm the judgment of the district court.

In July 1984 Larry and Irma Walker were involved in a head-on collision in Iowa. Larry Walker was driving a dune buggy with his wife Irma Walker in the passenger seat. Both are residents of Kansas. The Walkers were hit by a car driven by Leslie Eloge, a resident of Nebraska, who was drunk at the time of the accident. Irma Walker was killed and Larry Walker was injured in the accident. The Walkers sued Eloge, Randy Sheldon (pursuant to Iowa's Dram Shop law), and their insurance company, State Farm, in federal district court in Iowa. State Farm's regional office covering Kansas is headquartered in Missouri. The Walkers settled with Eloge and Sheldon and released them from further liability, leaving the Walkers and their insurance company, State Farm, remaining in the litigation.

The parties dispute how much State Farm is obligated to pay on the Walkers' underinsured motorist policy because Eloge's insurance did not cover all of the Walkers' damages. A threshold question

2. The district court entered a judgment declaring that the Walkers were not allowed to stack their underinsured motorist coverages and the maximum amount for which State Farm was liable was the policy limits of a single policy. *Walker v. Eloge,* Civil No. 86–36–W (S.D.Iowa Dec. 1, 1988). The exact amount of State Farm's liability remained undecided until a decision regarding the appropriate set-off was issued and final judgment was entered on September 20, 1991, finding State Farm liable for a total of $50,000.00 *Id.* (Sept. 20, 1991).

is which state's law should be applied because the Walkers are residents of Kansas and State Farm is a resident of Missouri. The second issue is whether or not the stacking of underinsured motorists coverage is allowed under the applicable state law and the Walkers' policies.

The district court entered summary judgment in favor of State Farm holding that Kansas law applied and that, under Kansas law and the Walkers' insurance policies, stacking of underinsured motorists coverage was not allowed. The district court thus awarded the Walkers $50,000.00 ($25,-000.00 each), which is the maximum amount of their policy minus the set-off amount received from Eloge. The Walkers now appeal to this court.

We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2551–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

*Choice of Law*

■ Jurisdiction in the district court was based on diversity. 28 U.S.C. § 1332. This action was filed in Iowa, where the accident took place, and, therefore, the Iowa choice-of-law provision determines which state's law should apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477 (1941); *Whirlpool Corp. v. Ritter,* 929 F.2d 1318, 1320 (8th Cir.1991). Iowa has adopted the Second Restatement of Conflicts as its choice-of-law provision. The Second Restatement applies the law of the state with the most significant interests in the litigation. Restatement (Second) of Conflicts of Law § 188 (1971); *Cole v. State Auto. & Casualty Underwriters,* 296 N.W.2d 779, 781 (Iowa 1980) (*Cole*). The district court determined that Kansas had the most significant relationship to the litigation, and, therefore, applied Kansas law.

The Walkers argue that Missouri law should be applied because Missouri, not Kansas, had the most significant interests in the litigation. The Walkers correctly explain that their insurance policies do not specify which state's law should be applied. The Walkers argue that this take-it-or-leave-it insurance policy was offered to them by a Missouri resident (State Farm's regional office is in Missouri) and was not accepted by State Farm until the Missouri office received their payment. The Walkers admit that the place of performance is Kansas, but argue that this is not controlling because the policy recognized the potential use of the vehicles outside of Kansas.

The Walkers also argue that under Kansas choice-of-law provisions, Kansas would apply Missouri law.[3] The Walkers admit that the district court should not have applied Kansas choice-of-law provisions, but argue the district court should have considered this factor in determining which state's law applied.

State Farm argues that the district court correctly held that Kansas law applied. State Farm argues that Kansas had the most significant interests in the litigation because the insured cars were registered in Kansas, the Walkers resided in Kansas, and the insurance policies were accepted when the Walkers signed them in Kansas, not when State Farm received the money in Missouri. State Farm also argues that § 193 of the Second Restatement of Conflicts specifically applies to insurance contracts and states that the law of the principal location of the risk should be applied. While cars are mobile, State Farm argues that Kansas fits this definition.

We agree with the district court that Kansas has the most significant interests in the litigation. The contacts with Kansas included: (1) the Walkers were residents of Kansas; (2) the insured automobiles were registered and garaged in Kansas; (3) the

---

**3.** State Farm disputes this assertion.

Walkers initially dealt with a Kansas State Farm agent in completing their insurance applications; (4) the Walkers' insurance policies mentioned Kansas in reference to no-fault coverage, defined motor vehicle with references to Kansas law, and provided certain coverage for accidents outside of Kansas; (5) the Walkers' insurance policies, in the section on uninsured/underinsured motorist coverage, gave the insured the right to arbitrate a dispute pursuant to Kansas law; and (6) the insurance policies were signed in Kansas. Missouri's contacts included: (1) State Farm's regional office is located in Missouri; (2) the Walkers mailed all payments to the Missouri State Farm office; (3) all communications came from the Missouri office and the Walkers' insurance policies were maintained there; and (4) the Walkers dealt with a State Farm agent from the regional office.

We are persuaded by the facts that the Walkers were residents of Kansas and dealt with a Kansas agent to purchase insurance for their vehicles garaged in Kansas. Kansas has a significant interest in the litigation and in protecting its citizens who purchase automobile insurance. The fact that State Farm's regional office is in Missouri does not give Missouri a more significant interest in the litigation. *See id.* at 782.

*Stacking of Underinsured Motorists Policies*

■ The Walkers argue that, under Kansas law, stacking of their insurance policies is required.[4] The Walkers have six vehicles insured with State Farm under basically identical contracts. The only differences are the coverage limits and deductibles. The Walkers argue that their underinsured motorist coverage should be the aggregate of the total amount of the underinsured motorist coverage they have on all six vehicles. This stacking of underinsured motorist coverage, prior to 1981 amendments, was presumed under Kansas

law. *Davis v. Hughes,* 229 Kan. 91, 622 P.2d 641, 648 (1981); *Welch v. Hartford Casualty Ins. Co.,* 221 Kan. 344, 559 P.2d 362, 367 (1977).

In 1981, Kansas amended Kan.Stat.Ann. § 40–284. Section 40–284(d) deals with the stacking of uninsured and underinsured coverage:

> Coverage under the policy shall be limited to the extent that the total limits available cannot exceed the highest limits of any single applicable policy, regardless of the number of policies involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid or vehicles involved in an accident.

The Walkers admit that the 1981 amendment eliminated automatic stacking in Kansas, but claim that the amendment only gave insurance companies the right to eliminate stacking. Because nothing in their insurance policies specifically eliminates stacking, the Walkers argue that § 40–284(d) should not automatically be read into their insurance contracts. The Walkers argue that because this new provision is for the benefit of insurance companies, State Farm must explicitly add anti-stacking language to their policies for § 40–284(d) to have effect. The Walkers claim that their interpretation prevents insurance companies from "sandbagging" their customers by not adding the anti-stacking language to the policies, but then forbidding stacking.

State Farm argues that Kan.Stat.Ann. § 40–284(d) forbids stacking even where the policy is silent on the issue. State Farm argues that the language "shall be limited" means that § 40–284(d) is not an optional provision, but a mandate.

We agree. Section 40–284(d) clearly states that underinsured motorist coverage "shall be limited" to the maximum of one policy. This mandatory language contrasts with Kan.Stat.Ann. § 40–284(e) (emphasis added) which states that "[a]ny insurer

---

**4.** Stacking has been defined by the Kansas Supreme Court as follows: " 'Stacking,' in connection with uninsured motorist coverage, refers to the right to recover on two or more policies in an amount not to exceed the total of the limits

of liability of all policies up to the full amount of the damages sustained." *Van Hoozer v. Farmers Ins. Exch.,* 219 Kan. 595, 549 P.2d 1354, 1364–65 (1976).

*may provide* for the exclusion or limitation of coverage" and then provides a list of terms. Section 40–284(e) is clearly optional and for the exclusions to apply, the exclusion must be written into the insurance policy. Therefore, the Kansas legislature clearly intended § 40–284(d) to be mandatory or the legislature would have used the optional language used in § 40–284(e). *See Collins v. State Farm Mut. Auto. Ins. Co.*, 902 F.2d 1371, 1373 (8th Cir.1990) (applying Kansas law); *Farmers Ins. Co. v. Gilbert*, 14 Kan.App.2d 395, 791 P.2d 742, 747, *aff'd & modified on other grounds*, 247 Kan. 589, 802 P.2d 556 (1990).[5]

Accordingly, we affirm the judgment of the district court.

---

5. The Walkers also argue that stacking should be allowed because of estoppel and reasonable expectations. These arguments are simply a repetition of their statutory interpretation argument and fail for the same reasons.